Hillsborough,
No. 4925.

MANCHESTER *v.* IDEAL DAIRY, INC. *& a.*

Argued May 2, 1961.

Decided June 30, 1961.

*J. Francis Roche*, city solicitor (by brief and orally), for the plaintiff.

*Normand R. Pelletier* (by brief and orally), for the defendants.

WHEELER, J.  The agreed statement of facts establishes that Ideal Dairy, Inc. has been licensed to sell milk and other dairy products in Manchester since April 22, 1955.  It sells milk in sixteen New Hampshire towns and cities, and in three in Massachusetts.

Ideal has been purchasing its milk from Vermont producers since 1951 and from Windsor Creamery, Inc. of Windsor, Vermont since June 1960.  Previous to December 7, 1960, Ideal had been processing this milk at its Nashua plant.  In order to reduce costs it arranged with Idlenot Farm Dairy of Springfield, Vermont, to package in paper cartons all of the milk sold in this state.

After January 7, 1961 all milk sold by Ideal was processed by Idlenot.  Idlenot purchases milk from approximately 51 producers located in an area up to 145 miles from Manchester.  Springfield, Vermont is approximately 73 miles from Manchester.  Idlenot has been processing and bottling milk for some forty years and is licensed by the New Hampshire Department of Food and Chemistry to package and sell beverages under the provisions of RSA ch. 143. It is licensed by the New Hampshire Milk Control Board as a distributor under RSA ch. 183.  It is presently selling milk in Claremont and other communities in this state.

Idlenot is inspected by the State Board of Health at irregular intervals, the last inspection having been in 1961.  The city of

Nashua plans on inspecting the dairy twice a year. The Vermont Board of Health makes inspections twice a year. The Massachusetts Department of Agriculture inspects the dairy once a year. The Veterans Administration may inspect when it has a contract to purchase milk.

Raw milk from each farmer which produces for Idlenot is tested twice a month by the Massachusetts Dairy Laboratory, a private organization. The Nashua board of health receives these reports, and has made its own laboratory tests of milk from each producer twice in 1961 and plans to do this eight times this year. It also tests processed milk from Idlenot Dairy at least eight times a year. These various reports are available to the plaintiff without cost.

Manchester inspects the farms of each producer of milk that is sold in the city, including 23 producers of Ideal. Some of the farms inspected are in the vicinity of Springfield and some in Barre, Vermont, which is 84 miles beyond Springfield.

On December 10, 1960, Ideal applied to the Manchester board of health for a temporary six-months license to bottle or package milk in Vermont for delivery in Manchester. A hearing was held on this application on January 10, 1961 and at a special meeting of the board of health on January 17, 1961 the request was denied. Ideal held a license which would expire May 31, 1961.

After notification of the denial of its application an agent of Ideal notified the board that it would continue to sell milk in Manchester regardless of the board's decision. As a result the board on January 24, 1961 voted "to revoke the license of Ideal Dairy, Inc. for cause," and the defendant was so notified.

The board permits milk to be brought into the state for resale to the public provided it is processed and bottled in this state in a processing plant within a reasonable distance from Manchester. The board takes a view and makes a physical examination of processing plants in this state once a month and conducts laboratory tests from milk furnished by each farmer every two months. There are thirteen such plants and two distributors under the board's supervision licensed to sell milk processed by a licensed dealer. Nine of these plants are located in Manchester, three in Bedford and one in Milford. These plants, excluding Ideal, have 295 producers located in Vermont and New Hampshire.

The primary objection of the plaintiff to the issuance of a license to the defendant is that to permit Ideal to sell milk bottled in Vermont would add to its inspection load 51 more producers

making a total of 346 under its supervision. It contends that inspection of these additional producers of Idlenot would be too costly and inconvenient. It is argued that it is within the reasonable scope of its power and discretion to limit the territory which in the performance of its duty it must supervise. *Whitney* v. *Watson*, 85 N. H. 238.

The defendant contends that it has met all the statutory requirements to sell milk in Manchester. RSA 184:4 provides in substance that the boards of health of cities may grant licenses to any person who applies therefor to sell milk and dairy products " . . . provided, that said applicant will satisfy the board of health . . . that he understands the care and handling of said product, and files the name and address of all his producers, and gives reasonable assurance that the cows from which said milk is taken are healthy and are properly fed and cared for." The board of health of Manchester on April 2, 1923 adopted certain regulations governing the production and sale of milk in the city. Among these provisions is the following: "Dairies producing milk for sale in Manchester, N. H. shall be inspected at least twice each year."

It is further contended that the plaintiff has no legal authority to issue or deny a license to bottle milk in Vermont and the action of the board in revoking defendant's license to sell milk " . . . is unreasonable, arbitrary, discriminatory, illegal, and an infringement on interstate commerce."

While the statute (RSA 184:4) does not contain express authority to license a Vermont processor of milk, the broad powers delegated to the board of health requiring "reasonable assurance that the cows from which the milk is taken are healthy and are properly fed and cared for" authorized the adoption of reasonable rules and regulations to insure the purity of such milk before a license to distribute is issued and for revocation of such license for failure to comply with these regulations. *Whitney* v. *Watson, supra.*

No claim is made here that Idlenot milk does not meet the standards set by the State for purity. If the milk is bottled in this state the plaintiff has no objection. Its only contention is that to inspect 28 additional producers and the Idlenot Dairy "would be too inconvenient and too costly." In connection with licenses issued to other dealers, the board is presently inspecting producers in Vermont as far as Barre, which is 85 miles beyond Springfield, Vermont. On the record before us, its refusal to inspect the defendant's Vermont producers, although at the same time inspect-

ing producers in the same general area who market through other licensed dealers, must be considered discriminatory and unreasonable. *Hood & Sons* v. *Boucher*, 98 N. H. 399. See anno. 14 A. L. R. 2d 103, 114 III, *s*. 9.

The board found that the assurance required by RSA ch. 184 "cannot be had without a view and physical examination of the producers and processing plant (including raw milk)." See *Whitney* v. *Watson, supra*. Whether such examination constitutes the only "reasonable assurance" possible within the meaning of the statute cannot be determined upon this record. If it does, then under the statute it is a condition precedent to the granting of a license.

But the city board may not arbitrarily deny the license because it has determined that inspection by it of the defendant's producers is expensive to the city and beyond the capacity of its existing staff. Neither the statute nor the plaintiff's regulations require inspection to be made by the licensing authority. To the extent that the city staff cannot make the two inspections a year which the board considers necessary, no reason appears why arrangements may not be made by the parties for supplementary inspection by independent inspectors. See *Hood & Sons* v. *Boucher, supra.*

Monthly inspection of the processing plant of Idlenot Dairy at Springfield, Vermont should present no insuperable obstacle to the city staff, which has been able to inspect producers located in this vicinity who market to the defendant and other dealers. Requirement by the board that a processor must be "located in . . . N. H. within a reasonable distance from the city of Manchester" cannot be considered essential to "reasonable assurance that the cows from which the milk is taken are healthy and are properly fed and cared for." RSA 184:4.

The revocation of the defendant's license should be set aside. The defendant should be entitled to a new license, subject to arrangement for such inspection of producers' farms as may be found necessary to furnish the "reasonable assurance" required by the statute. In considering what constitutes "reasonable assurance" due weight must be given to the tests of raw and processed milk which can be conducted by the city, and the availability of like tests conducted by others.

*Remanded.*

All concurred.